**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

JESSE YOAKUM and )
RAYMOND RUSHLEY, )
)
on behalf of themselves )
and all others similarly situated, )
)
Plaintiffs, )
)
v. )  Case No.: 4:19-CV-00718-BP
)
GENUINE PARTS COMPANY, et al. )
)
Defendants. )

## FOURTH AMENDED CLASS ACTION COMPLAINT

COME NOW Plaintiffs, on behalf of themselves and all others similarly situated, and for their causes of action state and allege as follows:

## INTRODUCTION

1.      For years, Defendants, as well as other lubricant manufacturers and sellers, have deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as "303" fluid meeting "303" specifications when, in fact, the "303" designation is obsolete and 303 specifications have not been available for over forty (40) years.

2.      These manufacturers and sellers have also deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, Defendants knew, or should have known, the fluid they were selling did not meet all listed manufacturer specifications and did not contain the anti-wear and protective properties required in Tractor Hydraulic Fluid.

3.      Tractor Hydraulic Fluid (THF) is a multifunctional lubricant that has been manufactured for and used in tractors and equipment for over fifty (50) years.

4.      The term "tractor" refers to a large category of powered equipment used in a wide range of farming, ranching, orchard, construction, earth moving, gardening and other applications that involve essential tasks which can be done more quickly and more effectively when mechanized that if done by hand.  Tractors range in scale from large utility tractors that are used for agricultural and construction applications to smaller garden and lawn tractors.

5.      Many tractors are wheeled vehicles commonly associated with farming, but may also be wheeled, half-tracked or tracked vehicles used in farming, earth moving, construction and other applications.  Bulldozers, excavators, front loaders and certain types of skid loaders are common examples of construction tractors or tracked tractors.

6.      THF is designed to act as a hydraulic fluid, transmission fluid and gear oil for this equipment and it not only for use in traditional, wheeled farm tractors.  For example, at relevant times during the Class Period, Defendant Genuine Parts Company sold one version of the NAPA-branded THF with a photo of a large, wheeled front end loader on the label of NAPA's 5-gallon bucket of *Premium* Heavy Duty Tractor Hydraulic & Transmission Fluid:



7.      In the 1960s and early 1970s, John Deere (Deere) manufactured a popular and widely used THF called JD-303 or simply "303," and the term "303" became synonymous with the John Deere name and this high-quality and effective THF product that could be used in tractors and other equipment described above; its use was not limited to farm tractors manufactured by John Deere.

8.      Sperm whale oil was an essential ingredient in Deere's 303 THF.  In the mid-1970s, the passage of laws protecting endangered species outlawed the use of sperm whale oil.   Deere was forced to manufacture a new tractor hydraulic fluid with different additives that would be both effective and affordable.

9.      Deere's "303" formula could no longer be manufactured or sold, and because its essential ingredient—sperm whale oil—could no longer be used, the designation became obsolete and there are no specifications available for "303" tractor hydraulic fluids.

10.      After it stopped producing and selling its 303 THF, Deere manufactured and sold several THF products with certain ingredient, viscosity, anti-wear and detergent additive specifications, including J14B, J20A and J20B.  Many other manufacturers created and sold fluids that purported to be similar.

11.      The J14B specification became obsolete in the late 1970s.  During the time the J20A/B specifications were in use, Deere used a licensing program called Quatrol to police the quality of THF products in the marketplace.  The Quatrol program required blenders and sellers of competing THF products to submit test data to Deere prior to the use of the J20A specification on their product labels, to ensure the products met the advertised specifications.

12.      In the late 1980s or early 1990s, Deere abandoned the J20A/B specification as well. Today, John Deere manufactures and sells THF meeting a specification called J20C or J20D (low viscosity).   The J20C fluid is sold under the name "Hy-Gard," and many other manufacturers

3

market and sell products meeting the J20C specification in order to compete with John Deere. The following timeline illustrates the history of THF:



**TRACTOR HYDRAULIC FLUID (THF) TIMELINE**

JOHN DEERE THF SPECIFICATIONS

| John Deere Specification[3] | Comment | JD Issue Date |
|---|---|---|
| JDM J20D[3] | THF for cold climates | 1989 - Current |
| JDM J20C[2] | Primary THF specification | 1989 - Current |
| JDM J20B[3] | DISCONTINUED – replaced by JDM J20D | 1978 - 1989 |
| JDM J20A[2] | DISCONTINUED – replaced by JDM J20C | 1978 - 1989 |
| JDM J14B | DISCONTINUED – replaced by JDM J20A/B | 1974 - 1978 |
| JDM J303[1] | DISCONTINUED – replaced by JDM J14B | 1960 - 1974 |

Footnotes:
1. There are no specifications available for 303 Tractor Hydraulic Fluids and, as such, products making only "303" claims cannot be tested to assure compliance with any known specifications.
2. Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Summer or warm weather climates)
3. Low Viscosity Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Winter or cold weather climates)

13.     John Deere discontinued the Quatrol program around the time J20A was discontinued (approximately 1989). The subsequent lack of a quality control program or policing of the products on the market resulted in a "free for all" with respect to the THF manufactured and sold in the open market and the opportunity for unscrupulous manufacturers and sellers to falsely use the Deere specifications (and other manufacturers' specifications) on the labels of the THF products they sell.

14.     Manufacturers and sellers of THF deceptively and illegally trade on the obsolete and non-existent "303" designation, the other obsolete J14B and J20A specifications, and the John Deere trade name that was and has continued to be so prevalent in the industry.

15.     Because there is no known "303" specification, there is no way for manufacturers, sellers, or anyone else to truthfully claim a tractor hydraulic fluid (such as Defendants' THF Product) meets or is in compliance with any such specification.

4

16.     Because of the lack of policing in the market, manufacturers like Defendants deceptively and illegally sell "down treated" fluid as meeting J20A or other manufacturers' specifications when, in fact, they know the THF does not meet those specifications or have the performance properties provided by fluids that meet those specifications.

17.     Nonetheless, manufacturers and sellers promote these "economy" THF products as a lower cost alternative, and offer them for sale as economically priced tractor hydraulic fluids that meet many (or in some cases all) manufacturers specifications, have effective lubricant and anti-wear additives and properties, and are safe for use in purchasers' equipment.

18.     The THF fluids are often sold with eye-catching photos of modern tractors and industrial equipment and are sold in bright, yellow 5-gallon buckets.  By name dropping a list of equipment manufacturers, Defendants and other sellers seek to create an impression of quality and take advantage of consumers' lack of understanding of the multitude of complex manufacturer specifications.  Defendants' NAPA *Quality* Tractor Hydraulic & Transmission Fluid, Warren 303 Tractor Fluid, Carquest 303 Tractor Hydraulic Fluid, Coastal 303 Tractor Fluid and Lubriguard Tractor Hydraulic and Transmission Oil are five such products which, on information and belief are identical in nature and formula.  Each was manufactured and packaged by Warren Unilube, Inc., Warren Oil Company, Inc. and Warren Oil Company, LLC.  They are referred to collectively herein as the "THF Product."

19.     In addition to deceptively promoting a designation that is obsolete, manufacturers use poor quality base oils, used oils and/or diluted additive packages in their economy THF products in order to keep production costs down and increase profits.  As a result of the inferior ingredients and this "down-treating" of additive packages, the economy THF fluids not only lack the required lubricant and protective benefits offered to purchasers, when they are used the fluids actually cause purchasers' equipment to suffer increased wear and damage to the spiral gear,

5

excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes.  Despite use of these inferior ingredients and inadequate protective additives, the THF is labeled and marketed to unsuspecting purchasers as meeting manufacturer specifications and providing certain benefits and anti-wear properties.

20.    In October through December of 2017, because of the deceptive nature of the THF products, the failures of the products to meet any published specification, and the damage the products could cause to consumers' equipment, the State of Missouri's Department of Agriculture, Division of Weights and Measures, banned Defendants and all other manufacturers and sellers from offering THF products that did not meet any known specification for sale in Missouri.

21.    Despite the ban of "303" THF and other poor performing tractor hydraulic fluid in several states and despite increased scrutiny on those products throughout the country, Defendants continued for some time to sell their THF Product in states where the fluid had not been banned.

22.    For years, Defendants' conduct harmed consumers like Plaintiffs, who purchased economy or "303" tractor hydraulic fluid products, more specifically NAPA *Quality* Tractor Hydraulic & Transmission Fluid, Warren 303 Tractor Fluid, Carquest 303 Tractor Hydraulic Fluid, Coastal 303 Tractor Fluid and Lubriguard Tractor Hydraulic and Transmission Oil, that were offered and sold as an acceptable tractor hydraulic fluids that meet certain manufacturer specifications—including J20A, Hy-Tran and Permatran—and as fluids that are safe for use in farm, construction and logging equipment and have certain characteristics and qualities that protect equipment from wear and damage.

23.    In reality, instead of receiving a product that was an acceptable tractor hydraulic fluid that met manufacturers' specifications, Plaintiffs and other purchasers received a THF Product that, contrary to Defendants' labeling, had no known specifications, had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective

6

characteristics and/or did not meet one or more of the manufacturers' specifications and therefore caused consumers' equipment damage and harm, increased wear, and caused consumers to overpay for a product that was worthless and/or worth much less than the sale price. Like many other consumers throughout the State of Missouri and the rest of the country, Plaintiffs Jesse Yoakum and Raymond Rushley purchased Defendants' THF Product, and suffered damage as a result.

24.     In October 2017, in connection with its issuance of stop sale order and the ban on 303 THF Products, the State of Missouri's Department of Agriculture, Division of Weights and Measures, stated publicly that it had performed testing on the 303 THF Product and that the testing revealed that the products did not meet any manufacturers' current tractor hydraulic fluid specifications and were underperforming to the point damage was likely to result from use.

25.     Until the State of Missouri's public disclosures in October 2017, neither Defendants' misrepresentations, omissions, nor the fact of injury to Plaintiffs and the Classes, were reasonably ascertainable. Defendants concealed any internal test data and the truth about the 303 THF Product at all relevant times during the class period.

## PARTIES

26.     Plaintiff Jesse Yoakum is a citizen and resident of Cleveland, Cass County, Missouri.

27.     Plaintiff Raymond Rushley is a citizen and resident of Garden City, Cass County, Missouri.

28.     Defendant Genuine Parts Company (GPC) is a for-profit company with its principal place of business in Atlanta, Georgia. Genuine Parts Company is engaged in the distribution of automotive and construction parts and products, including products sold under the NAPA

7

Automotive product line, and does business in Missouri and other states under the NAPA Auto Parts name.

29. Defendant Warren Oil Company, LLC is a for-profit company with its principal place of business in West Memphis, Arkansas. At some or all times during the class period, Warren Oil Company, LLC manufactured and packaged a wide range of lubricants, including tractor hydraulic fluid and the THF Product.

30. Defendant Warren Oil Company, Inc. is and/or was a for-profit company with its principal place of business in West Memphis, Arkansas. At some or all times during the class period, Warren Oil Company, Inc. manufactured and packaged a wide range of lubricants, including tractor hydraulic fluid and the THF Product.

31. Defendant Warren Unilube, Inc. is and/or was a for-profit company with its principal place of business in West Memphis Arkansas. At some or all times during the class period, Warren Unilube, Inc. manufactured and packaged a wide range of lubricants, including tractor hydraulic fluid and the THF Product.

32. Defendants GPC and Warren Oil Company, LLC, Warren Oil Company, Inc. and Warren Unilube, Inc. (referred to collectively herein as "Warren") have advertised and sold their THF Product in Jackson County, Cass County and throughout the State of Missouri and throughout the United States.

33. Defendants' conduct has harmed purchasers like Plaintiffs by inducing them to purchase and use Defendants' 303 THF Product through the false promise that the 303 THF Product met or had an equivalency to certain specifications (including JD-303 and J20A) and by directly or implicitly representing that the products were safe for use in farm, construction and logging equipment and had certain characteristics and qualities that protected equipment from

8

wear and damage when, in reality, the products did not meet any specifications and caused harm, increased wear and damage to Plaintiffs' equipment.

<u>**JURISDICTION AND VENUE**</u>

34.     Venue is appropriate in of the United States District Court for the Western District of Missouri, because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment, occurred in Jackson County, Cass County and elsewhere in the State of Missouri and throughout the United States.

35.     The United States District Court for the Western District of Missouri has personal jurisdiction over Defendants because Defendants transact business in Missouri, with their various advertising methods and product sales directed toward Missouri residents.  Additionally, Plaintiffs purchased the THF Product at issue in Missouri.

36.      Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class Member and Sub-Class Member is a citizen of a State different from any Defendant, there are more than 100 Class and Sub-Class Members, and the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

<u>**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**</u>

37.     Defendant GPC is in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce at its NAPA retail stores throughout Missouri and throughout the United States.

38.     Defendant GPC has advertised and sold the 303 THF Product to consumers throughout Missouri and throughout the United States.

39.     At some or all relevant times during the class period, Warren was/is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores throughout the State of Missouri and throughout the United States.

9

40.     During some or all of the time period from 2014 to the present, Defendants manufactured, sold and advertised in yellow buckets  THF Product called NAPA *Quality* Tractor Hydraulic & Transmission Fluid, Warren 303 Tractor Fluid, Carquest 303 Tractor Hydraulic Fluid, Coastal 303 Tractor Fluid and/or Lubriguard Tractor Hydraulic and Transmission Oil.  The THF Product was sold in Missouri and other states throughout the United States.

41.     On information and belief, throughout the class period Defendant GPC purchased THF Product from Warren for sale throughout the United States pursuant to distribution agreements entered into with Warren Unilube, Inc.

42.     On information and belief, during the class period Warren was operating under the name "Warren Unilube, Inc." and manufacturing and selling the THF Product under the name "Warren Unilube, Inc."  For example, correspondence in 2015 from Warren laboratory manager Ben Heater regarding 303 tractor hydraulic fluid was sent by Mr. Heater as Laboratory Manager for Warren Unilube, Inc.  Mr. Heater is currently employed in a similar position for Warren Oil Company, LLC.

43.     In addition, documentation pertaining to the THF Product at issue in this case contains the name Warren Unilube, Inc.  For example, Warren Unilube, Inc. is listed on the product specification sheet for the THF Product.  In addition, certificates of analysis and bills of lading with dates of 2017, 2018 and 2019 for the component products Warren used to manufacture the THF Product contain the name of Warren Unilube, Inc. as the customer and/or billing contact.

44.     During the class period, Warren was also operating under the name "Warren Oil Company, Inc." and manufacturing and selling the THF Product under the name "Warren Oil Company, Inc."  On information and belief, Warren used the name Warren Oil Company, Inc. until 2016.

10

45. For example, during the class period in 2015 and 2016, Warren employee Gary Whiteside was identified as Corporate Vice President for Warren Oil Company, Inc. when sending emails internally and to Warren's additive supplier.

46. In short, Warren manufactured and sold the THF Product under the corporate names Warren Unilube, Inc., Warren Oil Company, Inc. and/or Warren Oil Company, LLC at times during the class period. Despite the differing corporate names, the Warren entity itself was essentially the same in that time period and was at all times operating out of the same locations and places of business.

**Defendants' Deceptive Labeling, Marketing and Advertising**

47. During some or all of the time period from 2014 to the present, Defendants offered the 303 THF Product for sale at stores throughout Missouri and the United States as an acceptable tractor hydraulic fluid meeting a wide number of manufacturers' specifications. The sale price for a five (5) gallon bucket of Defendants' THF Product ranged from $40.00 to $70.00.

48. Defendants falsely and deceptively labeled, marketed and offered for sale the THF Product: (1) as single grade lubricant blended from virgin base oils and a high performance additive package; (2) as meeting many of the requirements of a premium tractor hydraulic and transmission fluid at a moderate cost; (3) as a replacement fluid in equipment manufactured by Allison, Ford, John Deere, Caterpillar, Allis Chalmers, New Holland, Oliver, Deutz, Clark, J.I. Case, International Harvester, Massey Ferguson and White; and (4) as a fluid that met the following tractor hydraulic fluid specifications: JD J20A, J14B, C (303), J21A, Case IH Hy-Tran and MF Permatran. The representations on the NAPA *Quality* Tractor Hydraulic and Transmission Fluid, the Warren 303 Tractor Fluid, the Carquest 303 Tractor Hydraulic Fluid, the Coastal 303 Tractor Fluid and/or the Lubriguard Tractor Hydraulic and Transmission Oil were similar and common in all material ways.

11

49. Defendants' labeling, marketing, advertising and sale of the THF Product has been widespread, continuous and contained on various signs, labels and advertisements in the State of Missouri and the United States for years.

50. At relevant times, the NAPA *Quality* Tractor Hydraulic & Transmission Fluid buckets contained the following information and representations:





51. At other relevant times, NAPA *Quality* Tractor Hydraulic & Transmission Fluid contained the following label and information:

12



52.     At relevant times, the Warren 303 Tractor Fluid buckets contained the following information and representations:



53.     At relevant times, the Carquest 303 Tractor Hydraulic Fluid buckets contained the following types of information and representations:



**CARQUEST® "303" TRACTOR HYDRAULIC FLUID** is a low viscosity, single grade lubricant blended from quality virgin base oils and a high-performance additive package. It meets many of the requirements of a premium tractor hydraulic fluid at a moderate cost. It gives excellent results in the areas of brake squawk, PTO clutch performance, rust protection, water sensitivity, extreme pressure/anti-wear properties and foam suppression.

**CARQUEST® "303" Tractor Hydraulic Fluid** may be used as a replacement fluid for the following manufacturers where a tractor hydraulic fluid is recommended:
- Allis Chalmers • Allison • Caterpillar
- Deutz • Ford Tractor • International Harvester
- J.I. Case/David Brown • John Deere 303 • Massey Ferguson
- Oliver • White

303 Tractor Fluid Part #s **LUB** 770-05, 770-55

54.     At relevant times, the Coastal 303 Tractor Fluid buckets contained the following information and representations:



**COASTAL "303" TRACTOR FLUID** is a low viscosity, single grade lubricant blended from quality virgin base oils and a high-performance additive package. It meets many of the requirements of a premium tractor hydraulic fluid at a moderate cost.

**COASTAL "303" TRACTOR FLUID** provides protection in the areas of brake squawk, PTO clutch performance, rust protection, water sensitivity, extreme pressure/anti-wear properties and foam suppression.

**COASTAL "303" TRACTOR FLUID** may be used as a replacement fluid for the following manufacturers where a tractor hydraulic fluid is recommended:

| | | |
|---|---|---|
| Allis Chalmers | Allison | Caterpillar |
| Deutz | Ford Tractor | International Harvester |
| J.I. Case/David Brown | John Deere 303 | Massey Ferguson |
| Oliver | White | |

14

55.     At relevant times, Lubriguard Tractor Hydraulic and Transmission Oil buckets contained similar representations.

56.     By labeling, and selling the THF Product in the foregoing manner, Defendants sought to create, and did create, an image of the THF Product in the minds of Plaintiffs and other consumers that would lead a reasonable consumer to conclude that Defendants' THF Product was completely safe and effective for use as tractor hydraulic fluid in consumers' equipment and in equipment made by the listed manufacturers and others.

57.     Defendants' product labeling, advertising and marketing of their 303 THF Product was material to the reasonable consumer.

58.     At the time of Defendants' labeling, advertisements, marketing and other representations, and as Defendants already knew or should have known, the representations regarding THF Product were false, deceptive and misleading to consumers seeking to purchase tractor hydraulic fluid.

59.     The John Deere "303" designation is over 50 years old and has been obsolete for many years. Certain ingredients of the original John Deere 303 fluid—such as sperm whale oil— have been banned since the 1970s and are no longer available for use. As a result, manufacturers have been unable to make and sell true "303" fluid for over forty (40) years and there are no known specifications for 303 fluid.

60.     Defendants knew or should have known that at the time they were marketing and selling the THF Product during the Class Period, there were no specifications available for "303" tractor hydraulic fluid and, therefore, claims that the THF Product met "303" specifications could not possibly be true, and Defendants had no way to ensure the accuracy of representations that their THF Product was in compliance with any known specifications. In fact, in an email exchange in January of 2014, Defendant Warren asked a third-party additive company when the 303

15

specification became obsolete and the additive company informed Warren that the 303 designation was from the 1960s and earlier, when tractors "were still competing with horses." During the class period defendants continued to sell the 303 THF Product with those specifications on the label.

61. Defendants also knew or should have known that at the time they were marketing and selling the THF Product during the Class Period, the product did not meet the J20A, IH Case Hy-Tran or MF Permatran specifications as stated on the product's label. The 303 THF Product's viscosity consistently tested well below acceptable levels for a non-low viscosity fluid.

62. Defendants also knew those specifications were obsolete. In August 2014, Defendant Warren asked its additive company to confirm the specifications were obsolete and the additive company provided confirmation. During the class period Defendants continued to sell the 303 THF Product with those specifications on the label.

63. As Defendants knew, or should have known, the THF Product manufactured by Defendants and sold in the yellow buckets lacked some or all of the additives required to meet the advertised specs and/or provide the advertised benefits.

64. On information and belief, the THF Product manufactured by Defendants and sold in the yellow buckets was made using flush oil, line wash or other components and additives that are never appropriate for use in a tractor hydraulic fluid.

65. As Defendants knew, or should have known based upon internal testing and the viscosity test results, the THF Product manufactured by Defendants and sold in the yellow buckets did not meet current specifications (and failed to meet certain obsolete specifications) for manufacturers of farm, logging and construction equipment.

66. Alternatively, Defendants knew, or should have known, they had no basis on which to sell the THF Product as a tractor hydraulic fluid that met the specifications of manufacturers listed on the label because, on information and belief, either 1) Defendants' test data showed the

16

viscosity, pour point and additive levels of the THF fluids varied, was inconsistent, and did not meet some or all of the specifications of the manufacturers listed on the labels; or 2) Defendants did not have any test data to confirm the THF Product always had the viscosity, pour point or additive levels that met all manufacturers' specifications or that were needed for a fluid suitable for use in consumers' equipment.

67.     In August 2014, Defendant Warren shared the label of the NAPA *Quality* Tractor and Hydraulic Transmission Fluid with a third-party additive company and the additive company told Warren there were red flags everywhere, and to proceed with caution.  Defendant GPC was aware of these problems too, and in December 2014 Defendant Warren informed Defendant GPC of the obsolete nature of the specifications on the label but Defendant GPC told Warren it wanted to continue to sell the product with the labels containing that information.  With this shared knowledge and understanding, during the class period Defendants continued to sell the 303 THF Product with the misleading information on the label.

68.     On information and belief, Defendants' NAPA *Quality* Tractor Hydraulic & Transmission Fluid, Warren 303 Tractor Fluid, Carquest 303 Tractor Hydraulic Fluid, Coastal 303 Tractor Fluid and Lubriguard Tractor Hydraulic and Transmission Oil were at all relevant times identical in nature and formula.  Each was manufactured and packaged by Warren.  Each were blended together in bulk.  Accordingly, on information and belief a purchaser of any one of the fluids (including Plaintiffs) received the same product as a purchaser of any of the other four (4) fluids.

69.     Any difference was only in branding; the THF Product was packaged as Warren 303 Tractor Fluid, as Carquest 303 Tractor Hydraulic Fluid, as Coastal 303 Tractor Fluid, as Lubriguard Tractor Hydraulic and Transmission Oil and as the private label "NAPA" fluid for

17

Defendant GPC. Defendant GPC sold both the Warren 303 and the NAPA *Quality* Tractor Hydraulic and Transmission Fluid in its NAPA stores.

70. The identical nature of those fluids' formula and composition is demonstrated by the testing documentation Warren produced in this case, which contains the heading titled "303 Tractor Fluid."

71. At no point in time, on the label of the THF product or otherwise, did Defendants tell purchasers the truth, including that:

  a. The "303" designation is obsolete, an essential ingredient in the formula was banned in the 1970s, and there is no known 303 specification against which to test the fluids offered for sale;

  b. Defendants, on information and belief, used low quality base oil, flush oil, or line wash, or reclaimed oil in the THF Product, all of which are unfit for use in hydraulic systems and should never be contained in a tractor hydraulic fluid;

  c. The THF Product contained a "down-treated" additive package;

  d. Defendants' test data did not confirm all of the THF Product met all manufacturers' specifications, including the advertised J20A, 303, Hy-Tran and Permatran specifications;

  e. Defendants have no idea whether all of the THF Product they offered for sale met the requirements of, has acceptable anti-wear properties, or is suitable for use in tractors or other equipment;

  f. Defendants' THF Product did not meet many of the requirements of a premium tractor hydraulic fluid, as stated on the labels; and

18

g.  Use of the THF Product would cause damage to purchasers' equipment, such as damage to the spiral gear in the drive, excessive wear, seal leakage, high pump leakage, and damage from deposits, sludging and thickening.

72.     Instead, the THF Product was deceptively offered for sale as a fluid containing sufficient additives, and meeting the obsolete and unavailable "303" specification, as meeting many of the requirements of a premium tractor hydraulic fluid, as well as meeting other specifications for numerous other tractor and equipment manufacturers, including J20A, Hy-Tran and Permatran.

### The State of Missouri's Testing of THF

73.     Because of the poor, uncertain quality of economy tractor hydraulic fluids and the deceptive way in which they are manufactured and sold, several private and governmental entities have been concerned about the sale of the fluids, the misleading nature of the labeling, and the damage the fluids can do to tractors and other equipment.  The Missouri Department of Agriculture (MDA) is one such entity.

74.     In the summer and fall of 2017, the MDA sampled many different THF products, many of which claimed to meet manufacturers' specifications and claimed to work in almost every tractor.  Defendants' THF Product was purchased in Missouri by the MDA in 2017 and was one of the products tested.

75.     The MDA tested the fluids' viscosity, pour point, and additive and detergent levels to determine whether those levels met any current industry tractor hydraulic fluid specifications, namely, John Deere's J20C specifications.

76.     As a result of the testing, the MDA concluded that all of these THF products failed to meet any current specifications and were found to be underperforming to the point that damage was likely to result from use.

19

77.     Defendants' THF Product was one of the fluids that failed to meet current specifications.  More specifically, Defendants' THF Product had a viscosity (Kinematic Viscosity @ 100C) levels as low 6.917.  The J20C and J20A specifications for KV@100C requires a minimum of 9.1 and therefore Defendants' THF Product fell far short of the standard for both specifications.

78.     Defendants' THF Product had a pour point between -30C and -36C.  The J20D specification for pour point requires of -45C, and therefore Defendants' THF Product fell short of the standard.

79.     Defendants THF Product also had additive levels of calcium, phosphorous and zinc that were well below the additive levels found in fluids meeting the J20C specification.

80.     Furthermore, Defendants' THF product's Kinematic Viscosity @ 100C levels and low additive levels do not meet many or all of the specifications of the other manufacturers Defendants list on the labels of their THF Product, including Hy-Tran and Permatran.

81.     The J20A specification has a Kinematic Viscosity @ 100C requirement of 9.1 or greater and is nearly identical to the JDM J20C specification.  Similarly, the MF Permatran specifications have Kinematic Viscosity @ 100C numbers over 9.  With Kinematic Viscosity @ 100C levels as low as 6.917, the THF Product did not meet the label's advertised J20A or MF Permatran specifications.

82.     Defendants' THF Product's Viscosity Index tested at levels less than 80.  The MF Permatran specifications have a viscosity index of 130 of higher and the IH Case Hy-Tran specification also requires a viscosity index over 96.  Accordingly, Defendants' THF Product did not meet the label's advertised specifications.

83.     After its testing and research of the tractor hydraulic fluids, the MDA notified Defendants that the NAPA *Quality* Tractor Hydraulic & Transmission Fluid product was

misbranded and violated Missouri's law prohibiting deceptive business practices (sec. 413.115, RSMo.) because it failed to meet any current tractor manufacturer's specifications. The MDA's October 12, 2017 letter to NAPA with regard to NAPA *Quality* Tractor Hydraulic & Transmission Fluid stated:

> The Missouri Department of Agriculture is responsible for insuring that all consumer commodities including motor oil, antifreeze, automatic transmission fluid, or other automotive products sold or offered for sale in the state of Missouri meet the requirements of Missouri Revised Statute, Chapter 413 Weights and Measures and/or Missouri Code of State Regulation 2 CSR 90-22.140, Packaging and Labeling Requirements.
>
> On June 8, 2017, the Division of Weights, Measures and Consumer Protection purchased and tested a sample of NAPA *Quality* Tractor Hydraulic & Transmission Fluid. This product claims to meet John Deere specifications JD J20A, J14B, C(303), and J21A. All of these products were discontinued and were subsequently replaced with the current JDM-J20C or D. Testing indicates your product does not meet Kinematic viscosity for John Deere J20C or pour point for J20D. This product is misbranded because the product did not meet the specification limits. Additionally, the reported performance additive content is lower than a typical J20C.

84.     The MDA's letters then referenced Missouri Revised Statue 413.115 and noted the sale of misbranded commodities constituted a crime of deceptive business practice. The MDA letters then noted:

> **You are hereby ordered to remove this product from sale until changes are made to correct the labeling or the product.** Specification and certification information must validate any performance claims made on your package labeling. Suitability for use claims shall be based on appropriate field, bench and/or transmission rig testing. Performance claims include but are not limited to those set by original equipment manufacturers and standard setting organizations such as ASTM and/or SAE.

85.     Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Classes, were not reasonably ascertainable until, at the very earliest, the State of Missouri's disclosures and actions in October 2017. Defendants concealed any internal test data and the truth about the 303 THF Product at all relevant times during the class period.

**Defendants Continue to Sell the Deceptive, Poor Quality 303 THF Products**

86.     On information and belief, despite receipt of the MDA's stop sale notices, test results and concerns regarding the damage that was being caused to equipment, Defendants continued to manufacture and sell the products in states that had not banned the products. Defendants did not in any way change the formula of the 303 THF Product after the State of Missouri's ban.

87.     Rather than pull the 303 THF Product off the market in all states, Defendants decided to continue to sell the 303 THF Product. On information and belief, in all respects the 303 THF Product was made with the same formula, processes, and improper ingredients, and the labels continued to deceptively list the fluid specifications and the false and misleading claims of performance results.

88.     Despite the MDA findings, Defendants continued to sell the 303 THF Product and make those representations about the quality and performance properties of the product even though they knew the product did not meet or have an equivalency to any manufacturer specifications and that they did not have any data or evidence on which to base or substantiate the performance qualities represented on the label.

89.     Despite not having support for its claims of performance, Defendants continued to sell the THF Product to purchasers throughout the United States as a fluid recommended for use in all manufacturers' equipment, with representations of meeting various specifications and as having many of the properties of a premium tractor hydraulic and transmission fluid.

90.     Defendants did not take any action to inform purchasers of the State of Missouri's testing and findings concerning Defendants' 303 THF Product.

**Plaintiffs' Experience with Defendants' Labeling, Advertising and Products**

91.     In the five-year period prior to the original filing of this Class Action, Plaintiffs purchased Defendants' THF Product on numerous occasions.

92.     As with all Members of the Class, in the five-year period prior to the original filing of this Class Action, Plaintiff purchased Defendants' THF Product containing the label representations set forth above.

93.     Plaintiff Jesse Yoakum purchased and used NAPA *Quality* Tractor Hydraulic & Transmission Fluid manufactured and sold by Defendants.  In the time period of 2014 until the State of Missouri's ban, Plaintiff Yoakum purchased over twenty (20) 5-gallon buckets of NAPA *Quality* Tractor Hydraulic & Transmission Fluid at the NAPA Auto Parts retail stores located in Belton, Missouri and Harrisonville, Missouri.  Plaintiff paid approximately $40.00 for each bucket.

94.     On the THF Product label, Defendants state the fluid can be used as a replacement fluid in equipment manufactured by Caterpillar.

95.     The THF Product was used by Plaintiff Yoakum in the following equipment: Caterpillar 287C skid steer, Reichdrill T690W drill rig, Caterpillar 304C excavator, and a Gus Pech drill rig.

96.     Plaintiff Raymond Rushley purchased and used NAPA *Quality* Tractor Hydraulic & Transmission Fluid manufactured and sold by Defendants.  In the time period of 2014 until the State of Missouri's ban, Plaintiff Rushley purchased numerous buckets of NAPA *Quality* Tractor Hydraulic & Transmission Fluid at the NAPA Auto Parts retail stores located in Garden City, Missouri and Harrisonville, Missouri.  Plaintiff paid approximately $40.00 for each bucket.

97.     The THF Product was used by Plaintiff Rushley in the following equipment: John Deere 4430 tractor, John Deere 4630 tractor, John Deere 4010 tractor, Bobcat 853 skid steer, and

a John Deere 50 excavator. Plaintiff Rushley's purchases were primarily for personal, family or household use.

98.     As a result of Defendants' manufacturing and offering the THF Product for sale in Missouri, Plaintiffs purchased a tractor hydraulic fluid that was (falsely and deceptively) offered for sale as a "fluid that contained quality base oils and additives, met the requirements of premium tractor hydraulic and transmission fluid, met required specifications (including J20A, 303, Hy-Tran and Permatran) and was safe for use in equipment when, in reality, the fluid offered was of uncertain quality, lacked adequate viscosity and additives, had a value much less than the price offered for sale, and exposed equipment to increased wear and damage.

99.     Plaintiffs reasonably relied upon Defendants' representation that the fluid was a fluid with the foregoing qualities and Defendants' own labeling concerning the particular qualities and benefits of the 303 THF Product.

100.    All reasonable consumers would consider Defendants' THF Product to be suitable for use in tractors and other equipment and would not have any understanding or way to know that Defendants' THF Product was of uncertain quality, was made with ingredients that were not suitable for use in manufacturing tractor hydraulic fluid, lacked adequate viscosity and additives, had a value much less than the price offered for sale, and/or that use of Defendants' THF Product would cause all equipment to suffer increased wear and damage.

101.    A reasonable consumer would consider Defendants' labeling when looking to purchase a tractor hydraulic fluid.

102.    As a result of using Defendants' THF Product, Plaintiffs and Class Members: (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the THF Product was different than what Defendants represented; (d) were deprived of the benefit of the

24

bargain because the THF Product had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; and (f) suffered damage to their equipment, including but not limited to excessive wear, leakage in the seals, exposure to spiral gear damage, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening.

103.    When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiffs and Class Members their THF Product, Defendants knew or should have known that product (1) was not made with virgin base oils and a high performance additive package; (2) did not meet manufacturer specifications and was not acceptable for use as hydraulic fluid or transmission fluid in tractors and other equipment; (3) was not an adequate substitute for and did not satisfy John Deere's J20A, J14B, C(303), and J21A specifications or the Hy-Tran or Permatran specifications; (4) did not meet the requirements of a premium tractor hydraulic fluid; (5) and was not an adequate substitute for and did not satisfy the specifications of the manufacturers listed on the product label.

104.    Plaintiffs used the THF Product in the manner in which Defendants advised it could and should be used.

105.    As a result of Defendants' THF Product not meeting specifications as labeled, advertised, marketed, warranted, and promised, Defendants breached express and implied warranties, fraudulently or negligently induced Plaintiffs and Class Members to purchase their products through material misrepresentations, acted in a negligent manner, and were unjustly enriched.

106.    Defendants' manufacture, labeling, and sale of the THF Product was deceptive and misleading in at least the following respects:

a. Defendants' use of John Deere's "303" designation and the other manufacturers' specifications as specifications met by the product is deceptive and misleading. The THF Product does not use John Deere 303's formula and cannot meet the specifications for John Deere 303 or the other listed specifications;

b. Defendants packaged their THF Product in yellow buckets with illustrations of modern tractors and equipment so as to further deceive and mislead and create the impression that the THF Product was a legitimate tractor hydraulic fluid that met the specifications for John Deere 303, J20A and the specifications of the other listed equipment manufacturers;

c. Defendants engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the labels;

d. Defendants placed a deceptive and misleading statement on the product labels by listing manufacturers of equipment in which the 303 THF Product purportedly may be used, when in reality the product does not meet many of the specifications for the listed manufacturers' equipment;

e. Defendants made a deceptive and misleading statement on the product labels by representing that the product meets the requirements of premium tractor hydraulic fluids;

f. Defendants engaged in misleading and deceptive conduct with regard to their 303 THF Product in failing to disclose that the product contained inadequate and/or down-treated additive packages or additives; and

g. Defendants engaged in misleading and deceptive conduct with regard to their THF Product in failing to disclose that, on information and belief, the product

26

contained flush oil, line flush, and/or contained other materials that should never be contained in tractor hydraulic fluid.

107.    The conduct listed in paragraph 106 (a)-(g) constitutes deceptive and unconscionable business practices in violation of consumer protection laws.

108.    Defendants concealed any internal test data and the truth about the 303 THF Product at all relevant times during the class period. Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class, were not reasonably ascertainable until—at the earliest—the State of Missouri's public disclosures in October 2017.

109.    This action is brought by Plaintiffs against Defendants to recover all money paid by Plaintiffs and Class Members to Defendants for purchase of their THF Product which was labeled and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage caused to equipment owned by Plaintiffs and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendants' conduct.

## CLASS ACTION ALLEGATIONS

110.    Plaintiffs bring this Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and on behalf of a Nationwide Class as defined below to redress the wrongful conduct of Defendants in connection with their manufacturing, marketing and sale of the 303 THF Product.

111.    Plaintiffs seek, on behalf of themselves and all others similarly situated, relief for Defendants' negligence, breach of warranty, unjust enrichment, fraudulent and negligent misrepresentations, and for their violations of various statutes.

27

112. Plaintiffs thus seek certification of the following Nationwide Class of similarly situated persons:

> All persons and other entities who purchased NAPA *Quality* Tractor Hydraulic & Transmission Fluid, Warren 303 Tractor Fluid, Carquest 303 Tractor Hydraulic Fluid, Coastal 303 Tractor Fluid, or Lubriguard Tractor Hydraulic and Transmission Oil in the United States, at any point in time from July 26, 2014 to present, excluding any persons and/or entities who purchased for resale.

113. Plaintiff Rushley also seeks certification of the following Missouri-specific Sub-Class of similarly situated persons:

> All persons and other entities who purchased NAPA *Quality* Tractor Hydraulic & Transmission Fluid, Warren 303 Tractor Fluid, Carquest 303 Tractor Hydraulic Fluid, Coastal 303 Tractor Fluid, or Lubriguard Tractor Hydraulic and Transmission Oil primarily for personal, family or household use in Missouri, at any point in time from July 26, 2014 to present, excluding any persons and/or entities who purchased for resale.

114. Excluded from the Class and Sub-Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

115. The THF Product at issue was sold across Missouri and throughout the United States through retailers. The Class Members may be identified through use of sales receipts, affidavits, or through sales records.

116. The proposed Class and Sub-Classes are so numerous that joinder of all Class Members is impracticable.

117. There are questions of fact and law common to each Class and each Sub-Class which predominate over questions affecting only individual Class Members. The questions of law

and fact common to each Class and Sub-Class arising from Defendants' actions include, without limitation, the following:

a.  The components and qualities of Defendants' THF Product, and the cost to Defendants to manufacture, distribute, market and sell their 303 THF Product;

b.  Whether Defendants were unjustly enriched;

c.  Whether Defendants were negligent;

d.  Whether Defendants breached the express warranties provided in regard to the THF Product;

e.  Whether Defendants breached the implied warranty of merchantability with regard to the THF Product;

f.  Whether Defendants breached the implied warranty of fitness for particular purpose with regard to the THF Product;

g.  Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the THF Product and the obsolete nature of the products and the specifications the products claimed to meet;

h.  Whether Defendants' manufacturing, labeling, advertising, marketing and/or sale of their THF Product was deceptive, unfair and/or dishonest as alleged above;

i.  Whether Defendants' THF Product was being labeled, advertised and marketed as alleged above;

j.  Whether Defendants' THF Product was in actuality as alleged above;

k.  Whether Defendants studied or tested their labeling and the effect of the labeling on consumers' perceptions, and whether Defendants studied the susceptibility of consumers who might purchase tractor hydraulic fluid;

l.  Whether Defendants' representations regarding their THF Product were false and made knowingly by Defendants;

m.  Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the THF Product and the obsolete nature of the product and the specifications the product claimed to meet;

n.  Whether Defendants' representations were false and made negligently by Defendants; and

o. Whether use of the THF Product caused and/or exposed equipment to damage.

118. The Representative Plaintiffs' claims are typical of those in the putative Class and Sub-Class because they each purchased Defendants' THF Product and were similarly treated.

119. Plaintiffs are adequate representatives of the Class and Sub-Class because their interests do not conflict with the interests of other Members of the Class or Sub-Class. The interests of the other Class Members and Sub-Class will be fairly and adequately protected by Plaintiffs and counsel, who have extensive experience prosecuting complex litigation and class actions.

120. A Class Action is the appropriate method for the fair and efficient adjudication of this controversy. It would be impracticable, cost prohibitive, and undesirable for each Member of the Class and Sub-Class to bring a separate action. In addition, the presentation of separate actions by individual Class and Sub-Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendants, and/or substantially impairs or impedes the ability of Class Members to protect their interests. A single Class Action can determine, with judicial economy, the rights of the Members of the Class.

121. A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

122. Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class and Sub-Class. The Class Action is based on Defendants' acts and omissions with respect to the Class and Sub-Class as a whole, not on facts or law applicable only to the representative Plaintiffs. All Class Members and Sub-Class Members who purchased Defendants' products were treated similarly. Thus, all Class and Sub-Class

30

Members have the same legal right to an interest in relief for damages associated with the violations enumerated herein.

123.     Plaintiffs assert in Counts I through VII, below, the following claims on behalf of themselves and the Nationwide Class:

- Count I – Breach of Express Warranty

- Count II – Breach of Implied Warranty of Merchantability

- Count III – Breach of Implied Warranty of Fitness for Particular Purpose

- Count IV – Fraud/Misrepresentation

- Count V – Negligent Misrepresentation

- Count VI – Unjust Enrichment

- Count VII – Negligence

124.     Plaintiff Rushley asserts Counts I through VII as well as the following claim on behalf of himself and the Sub-Class:

- Count VIII – Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.* ("MMPA").

## COUNT I
### (Breach of Express Warranty)

125.     Plaintiffs incorporate by reference all preceding paragraphs of this Fourth Amended Class Action Complaint as if fully set forth herein.

126.     Plaintiffs and Class and Sub-Class Members purchased Defendants' THF Product for use as described above.

127.     Defendants represented that the product was suitable for use as a tractor hydraulic fluid and was suitable for use in equipment manufactured by a wide range of manufacturers.

128.     As set forth above, Defendants made common statements of facts regarding quality and use on the label of the THF Product.

129.     The common statements Defendants made on the label of the THF Product were made to induce Plaintiffs and Class and Sub-Class Members to purchase the THF Product and/or were a material factor in inducing Plaintiffs and Class and Sub-Class Members to purchase the THF Product, and therefore became part of the basis of the benefit of the bargain and an express warranty.

130.     As set forth above, the THF Product did not conform to the statements of Defendants.  As a result, Plaintiffs and the Class and Sub-Class Members did not receive goods as warranted by Defendants.

131.     On or about October 12, 2017, and the in months that followed, Defendants received notice from the MDA of the defects in the THF Product, including by letter informing Defendants the product was misbranded because it did not meet current specifications for tractor hydraulic fluid.

132.     Defendants have received from Plaintiffs additional, timely notifications of the defects in their THF Product.  Plaintiff Yoakum, through counsel, sent a letter dated April 1, 2019 to the NAPA retail stores where Plaintiff purchased the THF Product in Harrisonville and Belton, Missouri, informing the sellers that the THF Product does not conform to the warranty and label representations and that the product is not merchantable and not fit for its stated and ordinary purpose.

133.     The failure of the THF Product to conform to the statements of Defendants has caused injury and damage to Plaintiffs and Class and Sub-Class Members.

32

## COUNT II
### (Breach of Implied Warranty of Merchantability)

134.    Plaintiffs incorporate by reference all preceding paragraphs of this Fourth Amended Class Action Complaint as if fully set forth herein.

135.    Defendants directly or indirectly sold the THF Product to Plaintiffs and Class and Sub-Class Members for use as described above.

136.    Defendants represented that the product was suitable for use as a tractor hydraulic fluid and was suitable for use in equipment manufactured by Caterpillar and other manufacturers.

137.    As set forth above, at the time Defendants sold the THF Product, the product was not fit for its ordinary use and the use described by Defendants.

138.    Plaintiffs and Class and Sub-Class Members used the THF Product for its ordinary purpose and the use described by Defendants.

139.    On or about October 12, 2017, and the in months that followed, Defendants received notice from the MDA of the defects in the THF Product, including by letter informing Defendants the product was misbranded because it did not meet current specifications for tractor hydraulic fluid.

140.    Defendants have received from Plaintiff Yoakum additional, timely notification of the defect in their THF Product.  Plaintiff, through counsel, sent a letter dated April 1, 2019 to the NAPA retail stores where Plaintiff purchased the THF Product in Harrisonville and Belton, Missouri, informing the sellers that the THF Product does not conform to the warranty and label representations and that the product is not merchantable and not fit for its stated and ordinary purpose.

141.    The failure of the THF Product to be fit for its ordinary purpose has cause injury and damage to Plaintiffs and Class and Sub-Class Members.

## COUNT III
### (Breach of Implied Warranty of Fitness for Particular Purpose)

142.     Plaintiffs incorporate by reference all preceding paragraphs of this Fourth Amended Class Action Complaint as if fully set forth herein.

143.     Defendants directly or indirectly sold the THF Product to Plaintiffs and Class and Sub-Class Members for use as a tractor hydraulic fluid in various manufacturers' equipment as described above.

144.     Defendants represented that the product was suitable for use as a tractor hydraulic fluid and was suitable for use in equipment manufactured by Caterpillar and other manufacturers.

145.     As set forth above, at the time Defendants sold the THF Product, the product was not fit for its particular purpose of use as hydraulic fluid for tractors and/or other equipment.

146.     Defendants knew or should have known of the use for which the THF Product was purchased.

147.     Plaintiffs and Class and Sub-Class Members reasonably relied upon Defendants' judgment that the THF Product was fit for use as l hydraulic fluid for tractors and/or other equipment.

148.     When the THF Product was sold by Defendants, it was not fit for such use as hydraulic fluid for tractors and/or other equipment.

149.     On or about October 12, 2017, and the in months that followed, Defendants received notice from the MDA of the defects in the THF Product, including by letter informing Defendants the product was misbranded because it did not meet current specifications for tractor hydraulic fluid.

150.     Defendants have received from Plaintiff Yoakum additional, timely notification of the defect in their THF Product.  Plaintiff, through counsel, sent a letter dated April 1, 2019 to the

34

NAPA retail stores where Plaintiff purchased the THF Product in Harrisonville and Belton, Missouri, informing the sellers that the THF Product does not confirm to the warranty and label representations and that the product is not merchantable and not fit for its stated and ordinary purpose.

151.     The failure of the THF Product to be fit for its particular purpose has caused injury and damage to Plaintiffs and Class and Sub-Class Members.

**COUNT IV**
**(Fraudulent Misrepresentation)**

152.     Plaintiffs incorporate by reference all preceding paragraphs of this Fourth Amended Class Action Complaint as if fully set forth herein.

153.     Each time Defendants placed their product for sale, Defendants made representations regarding their THF Product, as set forth above, including without limitation the representations that the THF Product was suitable for use as a tractor hydraulic fluid, was made with virgin base oils and high quality additive packages, met the requirements of premium tractor hydraulic fluids, met or provided equivalency to various manufacturer specifications including 303, J20A, IH Case Hy-Tran and MF Permatran, and that the THF Product provided certain qualities, results and benefits.

154.     Defendants' representations set forth above, including without limitation the representations that the THF Product was made with virgin base oils and high quality additive packages, met the requirements of premium tractor hydraulic fluids, met or provided equivalency to various manufacturer specifications including 303, J20A, IH Case Hy-Tran and MF Permatran, and that the THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were false and made knowingly by Defendants, and were therefore fraudulent.

35

155.     Defendants' representations as set forth above, including without limitation the representations that the THF Product was made with virgin base oils and high quality additive packages, met the requirements of premium tractor hydraulic fluids, met or provided equivalency to various manufacturer specifications including 303, J20A, IH Case Hy-Tran and MF Permatran, and that the THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant with the intent that Plaintiffs and other Class and Sub-Class Members rely on such representations.

156.     Defendants' representations as set forth above, including without limitation the representations that the THF Product was made with virgin base oils and high quality additive packages, met the requirements of premium tractor hydraulic fluids, met or provided equivalency to various manufacturer specifications including 303, J20A, IH Case Hy-Tran and MF Permatran, and that the THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant despite knowing the representations were false at the time the representations were made, and/or without knowledge of the truth or falsity of the representations.

157.     Defendants' representations were material to the purchase of the THF Product.

158.     Plaintiffs and Class and Sub-Class Members relied on Defendants' representations, and such reliance was reasonable under the circumstances.

159.     Defendants' conduct as set forth herein with regard to the name, labeling, marketing and sale of the THF Product constitutes fraud on Plaintiffs and all Class and Sub-Class Members.

160.     Plaintiffs and Class and Sub-Class Members have been economically damaged by Defendants' fraudulent conduct with regard to the marketing and sale of the THF Product.

161.    As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and Class and Sub-Class Members have suffered ascertainable losses of money and other damages.

162.    Defendants concealed any internal test data and the truth about the 303 THF Products at all relevant times during the class period.    Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class and Sub-Classes, were not reasonably ascertainable until—at the earliest—the State of Missouri's public disclosures in October 2017.

163.    Defendants' conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiffs and other Class and Sub-Class Members.

164.    Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

**COUNT V**
**(Negligent Misrepresentation)**

165.    Plaintiffs incorporate by reference all preceding paragraphs of this Fourth Amended Class Action Complaint as if fully set forth herein.

166.    Each time Defendants placed their product for sale, Defendants made representations regarding their THF Product, as set forth above, including without limitation the representations that the THF Product was made with virgin base oils and high quality additive packages, met the requirements of premium tractor hydraulic fluids, met or provided equivalency to various manufacturer specifications, and that the THF Product provided certain qualities, results and benefits.

167.    Such representations were made by Defendants with the intent that Plaintiffs and the Class and Sub-Class Members rely on such representations in purchasing Defendants' THF Product.

168. Such representations were material to Plaintiffs' and the Class and Sub-Class Members' purchase of Defendants' THF Product.

169. Such representations were false.

170. Defendants failed to use ordinary care and were negligent in making and/or allowing to be made the representations set forth above.

171. Plaintiffs and the Class and Sub-Class Members relied on such representations and such reliance was reasonable under the circumstances.

172. Plaintiffs and Class and Sub-Class Members have been economically damaged by Defendants' negligent conduct with regard to the marketing and sale of the THF Product.

173. Defendants concealed any internal test data and the truth about the 303 THF Products at all relevant times during the class period. Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class and Sub-Classes, were not reasonably ascertainable until—at the earliest—the State of Missouri's public disclosures in October 2017.

174. As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class and Sub-Class Members have suffered ascertainable losses of money.

<u>**COUNT VI**</u>
**(Unjust Enrichment)**

175. Plaintiffs incorporates by reference all preceding paragraphs of this Fourth Amended Class Action Complaint as if fully set forth herein.

176. When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiffs and Class and Sub-Class Members their THF Product, Defendants knew that product (1) was not made with virgin base oils and a high performance additive package; (2) did not meet manufacturer specifications and was not acceptable for use as hydraulic fluid or

38

transmission fluid in tractors and other equipment; (3) was not an adequate substitute for and did not satisfy John Deere's J20A, J14B, C(303), and J21A specifications or the Hy-Tran or Permatran specifications; (4) did not meet the requirements of a premium tractor hydraulic fluid; (5) and was not an adequate substitute for and did not satisfy the specifications of the manufacturers listed on the product label

177. As a result, Plaintiffs and Class and Sub-Class Members: (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the THF Product was different than what Defendants represented; (d) were deprived of the benefit of the bargain because the THF Product had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; (f) did not receive a product that was suitable for use as a tractor hydraulic fluid; and (g) suffered damage to their equipment, including but not limited to excessive wear, leakage in the seals, exposure to spiral gear damage, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening.

178. As a result of Defendants' deceptive, fraudulent, and misleading naming, labeling, advertising, marketing, and sales of the THF Product, Plaintiffs and the Class and Sub-Class Members purchased Defendants' THF Product and conferred a benefit upon Defendants by purchasing obsolete and harmful fluid that was not actually suitable for use and a hydraulic fluid, which benefit Defendants appreciated and accepted.

179. Those benefits were obtained by Defendants under false pretenses because of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the THF Product.

180.     Defendants were enriched at the expense of Plaintiffs and other Class and Sub-Class Members through the payment of the purchase price for Defendants' THF Product.

181.     As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class and Sub-Class Members have suffered damages in an amount to be determined at trial.

182.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the other Class and Sub-Class Members, in light of the fact that the THF Product purchased by Plaintiffs and the other Members of the Class and Sub-Class were not what Defendants represented them to be. Thus, it would be inequitable or unjust for Defendants to retain the benefit without restitution to Plaintiffs and the other Members of the Class and Sub-Class for the monies paid to Defendants for the THF Product.

183.     By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and gains which they have obtained at the expense of Plaintiffs and Class and Sub-Class Members.

## COUNT VII
### (Negligence)

184.     Plaintiff incorporates by reference all preceding paragraphs of this Fourth Amended Class Action Complaint as if fully set forth herein.

185.     Defendants' owed a duty of at least reasonable care to the purchasers of their THF Product, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished THF Product.

186.     Defendants breached this duty by the acts and omissions alleged herein, including but not limited to:

40

a. Distribution and use of misleading labeling information regarding the THF Product qualities and OEM specifications met by product;

b. Failing to adequately warn and instruct purchasers about the true nature of the THF Product and potential harm to equipment caused by use of the THF Product in equipment for which it does not meet specifications;

c. Failing to adequately ensure the THF Product manufactured and sold met or had an equivalency to the advertised specifications;

d. Failing to utilize adequate testing and other controls to ensure the THF Product met the advertised specifications;

e. Failing to have appropriate viscosity specifications;

f. Using improper ingredients when formulating, blending and manufacturing the product; and,

g. Instituting and/or allowing careless and ineffective product manufacturing protocols.

187. As a result of Defendants' negligence, Defendants' THF Product had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications.

188. Defendants' negligence caused or contributed to cause injuries and damages to Plaintiffs and the Class and Sub-Class Members, caused Plaintiffs and the Class and Sub-Class Members' equipment to suffer harm and damage, including wear, damage and leakage in the seals, and exposure to damage in the spiral gear in the drive, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening. Defendants' negligence also caused or contributed to cause Plaintiffs and the Class and Sub-Class Members to overpay for a product that was worthless and/or worth much less than the sale price.

189.    Defendants concealed any internal test data and the truth about the 303 THF Product at all relevant times during the class period.  Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class and Sub-Class, were not reasonably ascertainable until—at the earliest—the State of Missouri's public disclosures in October 2017.

190.    Plaintiffs and Class Sub-Class Members are thus entitled to an award of compensatory damages, prejudgment interest and post-judgment interest.

191.    Defendants' conduct was grossly negligent and showed a complete indifference to or conscious disregard of the rights of others, including Plaintiff and Class and Sub-Class Members, such that punitive damages are thus warranted.

**COUNT VIII**
**(Violations of Missouri Merchandising Practices Act)**
**(Missouri Sub-Class)**

192.    Plaintiffs incorporate by reference all preceding paragraphs of this Fourth Amended Class Action Complaint as if fully set forth herein.

193.    Plaintiff Rushley and Missouri Sub-Class Members purchased Defendants' THF Product primarily for personal, family, or household purposes.

194.    Plaintiff Rushley and Missouri Sub-Class Members are "person[s]" for purposes of the Missouri Merchandising Practices Act ("MMPA").  Mo. Rev. Stat. § 407.010.

195.    Defendants' THF Product meets the definition of "merchandise" for purposes of the MMPA.  Mo. Rev. Stat. § 407.010.

196.    Defendants' sale of their THF Product is a "sale" within the meaning of the MMPA. Mo. Rev. Stat. § 407.010.

197.    Defendants engaged in "trade" or "commerce" within the meaning of the MMPA. Mo. Rev. Stat. § 407.010.

198.    Under the MMPA, Defendants have a statutory duty to refrain from deceptive acts and practices.

199.    Pursuant to the MMPA, an unlawful practice is the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the State of Missouri." Mo. Rev. Stat. § 407.020.

200.    Defendants used and employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their THF Product in trade or commerce in the State of Missouri, in violation of the MMPA.

201.    Defendants' conduct set forth above, including without limitation the representations that the THF Product was fit to be used in older tractors and other equipment, that the THF Product met many of the requirements of a premium THF, that the THF Product was suitable for use as a THF, and that the THF Product met or had an equivalency to specifications, were unfair, deceptive, false and misleading and made knowingly by Defendants or without knowledge as to their truth or falsity and were therefore deceptions, frauds, false pretenses, false promises, and misrepresentations as described at § 407.020 RSMo, and therefore a violation of the MMPA.

202.    Defendants' conduct set forth above, including without limitation the label representations that THF Product was fit to be used in older tractors and other equipment, that the THF Product met many of the requirements of a premium THF, that the THF Product was suitable for use as a THF, that the THF Product met or had an equivalency to specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, also constituted the omission or suppression of a material fact in violation of §

43

407.020 RSMo in that Defendants' THF Product was not appropriate for use and did not meet specifications as labeled, advertised, marketed, and sold.

203. Defendants' conduct as set forth herein with regard to the marketing and sale of the THF Product constitutes unlawful, unfair and/or fraudulent business practices in violation of the MMPA.

204. Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression or omission of material facts in connection with the marketing and sale of the THF Product, all in violation of §407.020 RSMo.

205. Defendants' conduct with regard to their THF Product was materially misleading and deceptive, and was a proximate cause of economic damage to purchasers.

206. Plaintiff Rushley and the Missouri Sub-Class Members have suffered economic and other damages as a result of Defendants' conduct with regard to the marketing and sale of the THF Product.

207. As a direct and proximate result of Defendants' illegal conduct, Plaintiff Rushley and the Missouri Sub-Class Members have suffered ascertainable losses of money.

208. Defendants' conduct as described herein was intentional, done knowingly, in conscious disregard of the rights of Plaintiff and other Missouri Sub-Class Members, and in violation of § 407.020 RSMo, and the regulations of the Attorney General of Missouri promulgated thereunder.

209. Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Sub-Class described in this Fourth Amended Class Action Complaint, respectfully request that:

44

A. The Court certify the Class and Sub-Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and adjudge Plaintiffs and counsel to be adequate representative thereof;

B. The Court enter an Order requiring each Defendant to pay actual and punitive damages to Plaintiffs and the other Members of the Class and Sub-Class;

C. The Court enter an Order awarding Plaintiffs, individually and on behalf of the other Members of the Class and Sub-Class, the expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

D. The Court enter an Order awarding to Plaintiffs, individually and on behalf of other Members of the Class and Sub-Class, pre-and post-judgment interest, to the extent allowable; and,

E. For such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and Class and Sub-Class Members hereby demand a jury trial on all issues of fact and damages in this action.

Date:   April 1, 2021                    Respectfully submitted,

WHITE, GRAHAM, BUCKLEY,
& CARR, L.L.C

BY:_____/s/ Bryan T. White_____
          William Carr          MO 40091
          Bryan T. White         MO 58805
          19049 East Valley View Parkway
          Independence, Missouri 64055
          (816) 373-9080 Fax: (816) 373-9319
          bcarr@wagblaw.com
          bwhite@wagblaw.com

HORN AYLWARD & BANDY, LLC

BY:___/s/ Thomas V. Bender_____
          Thomas V. Bender       MO 28099
          Dirk Hubbard,          MO 37936
          2600 Grand, Ste. 1100
          Kansas City, MO 64108
          (816) 421-0700 Fax: (816) 421-0899
          tbender@hab-law.com
          dhubbard@hab-law.com

CLAYTON JONES, ATTORNEY AT LAW

BY:_____/s/ Clayton A. Jones_____
          Clayton Jones          MO 51802
          P.O. Box 257
          405 W. 58 Hwy.
          Raymore, MO 64083
          (816) 318-4266 Fax: (816) 318-4267
          clayton@claytonjoneslaw.com

**ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed electronically with the United States District Court for the Western District of Missouri, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons this 1st day of April, 2021.

_/s/ Bryan T. White_